IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA NELSON, | ) | 4:14CV3010 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DENISE SKROBECKI, warden, in | ) | |
| her personal and professional | ) | |
| capacity, STEVE HUNZEKER, unit | ) | |
| administrator, in his personal and | ) | |
| professional capacity, DAMON | ) | |
| BRUBER, unit manager, in his | ) | |
| personal and professional capacity, | ) | |
| and BROOKE BJERRUM, unit | ) | |
| manager, in her personal and | ) | |
| professional capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed her Complaint in this matter on January 16, 2014. (Filing No. 1.) Plaintiff is a prisoner who has been granted leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

I.      SUMMARY OF COMPLAINT

Plaintiff is incarcerated at the Nebraska Correctional Center for Women ("NCCW") in York, Nebraska. (Filing No. 1 at CM/ECF p. 1.) She filed her Complaint against four employees of the NCCW: Warden Denise Skrobecki ("Skrobecki"), Unit Administrator Steve Hunzeker ("Hunzeker"), Unit Manager Damon Bruber ("Bruber"), and Unit Manager Brooke Bjerrum ("Bjerrum"). (*Id.*)

Plaintiff alleges that while incarcerated at NCCW, she was placed on work release and awarded community custody status.  On October 18, 2013, prison officials removed Plaintiff from her work release assignment at a truck stop and returned her to NCCW.  These same prison officials informed her they were doing so because they received information that she had left her work assignment and, therefore, had "unaccounted for hours."  (*Id.* at CM/ECF p. 6.)  Plaintiff disputed the allegations with each of the named defendants.  She explained to them that she was under constant video surveillance at her work assignment and the video footage would prove that she never left her work assignment while clocked in.  (*Id.*)  Despite her pleas, Plaintiff's community custody status was revoked.  Plaintiff never received a formal accusation of "unaccounted for hours."  (*Id.*)

Plaintiff alleges that Hunzeker, her unit manager, informed her that she had no right to know why her community custody status had been revoked.  (*Id.* at CM/ECF p. 9.)  When Plaintiff grieved the matter to Skrobecki, NCCW's prison warden, Skrobecki informed Plaintiff that she needed to "think about [her] actions and choices," but refused to tell Plaintiff what she had done to deserve the change in status. (*Id.*)

Plaintiff grieved this matter to the ombudsman's office.  A representative from the ombudsman's office informed Plaintiff that Skrobecki reported that Plaintiff had lost her community custody status because of a misconduct report.  (*Id.* at CM/ECF p. 10.)  Plaintiff alleges that Skrobecki changed the reason for revoking Plaintiff's status after the fact because Skrobecki knew the accusation of "unaccounted for hours" was unsupported.  (*Id.* at CM/ECF p. 11.)

For relief, Plaintiff seeks lost wages, reinstatement of community custody status and work release, and a declaration that community custody status is a protected liberty interest.  (*Id.* at CM/ECF p. 7.)

## II.   APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

Therefore, where pro se plaintiffs do not set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed" for failing to state a claim upon which relief can be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1957), and setting new standard for failure to state a claim upon which relief may be granted).  Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim.  *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).  However, a pro se plaintiff's allegations must be construed liberally.  *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.    DISCUSSION OF CLAIMS

#### A.    Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446-47 (8th Cir. 1995).* Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co., 64 F.3d at 444; Nevels v. Hanlon, 656 F.2d 372, 377-78 (8th Cir. 1981).* Sovereign immunity does not bar damages claims against state officials acting in their individual capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary relief against state employees in their official and individual capacities. (Filing No. 1 at CM/ECF pp. 1-2.) As set forth above, Plaintiff may not sue a state employee in his or her official capacity for monetary relief absent a waiver of immunity by the state or an override of immunity by Congress. The record before the court does not show that Nebraska waived, or Congress overrode, sovereign immunity in this matter. Accordingly, Plaintiff's claims for monetary relief against Defendants in their official capacities must be dismissed.

#### B.    Fourteenth Amendment Due Process Claims

Liberally construed, Plaintiff claims that she had a constitutionally protected liberty interest in continued participation in the work release program, and her summary removal from the program violated her right to due process. Liberally construed, Plaintiff also claims that she had a liberty interest in her community custody

classification, and that the summary revocation of this status also violated her due process rights.  "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Thus, Plaintiff must demonstrate that she has been deprived of a liberty interest in order to successfully claim that her Fourteenth Amendment right to due process has been violated.  *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).  A liberty interest can arise out of the Due Process Clause itself or be state-created.  *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (quotations omitted).

### 1.    Due Process Clause

Liberally construed, Plaintiff alleges she has a liberty interest that arises out of the Due Process Clause itself.  In support of her argument, Plaintiff cites to *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990).  (Filing No. 1 at CM/ECF p. 6.)  In *Edwards*, the Eighth Circuit Court of Appeals stated that a liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such as when he is on probation or parole.  *Id.*  In *Edwards*, the court held that an inmate enrolled in an Arkansas work release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution but lived in the community.  *Id.* at 302.  As the Tenth Circuit noted: "*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration."  *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995).  Indeed, other courts have similarly held that the revocation of things like parole, probation, and conditional release programs are protected by the Due Process Clause.  *See*, *e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of probation status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (revocation of parole); *see also Harper*, 64 F.3d at 566-67 ("[A] prisoner release program which permits a convict to

5

exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement."); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (finding inherent liberty interest in continued placement in supervised release program that allowed convict to live in society).

Here, Plaintiff alleges that prior to her work release being terminated, she was on community custody status, and was employed at a truck stop outside of the prison. Her allegations suggest she had ample freedom while on community custody status where she claims loss of this status resulted in "loss of passes, furloughs, contact with family as well as removal from intensive outpatient therapy." (Filing No. 1 at CM/ECF p. 6.) The court suspects that the conditions of Plaintiff's work release were much more restrictive than those at issue in *Edwards* and, therefore, more analogous to institutional life than to probation or parole. *See Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666 (8th Cir. 1996) (holding prisoner's work release program did not provide the sort of substantial freedom necessary to give rise to a protected liberty interest inherent in the Due Process Clause such that would entitle him to due process of law before program was terminated). However, at this stage in the proceedings, Plaintiff has set forth sufficient facts to allege that she had a protected liberty interest under the Due Process Clause in remaining in the work release program.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural requirements that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572. These safeguards are (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary

evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.  *Id.* at 565-66.

Here, Plaintiff complains that Defendants removed her from the work release program and revoked her community custody status without telling her why and without giving her an opportunity to defend herself.  (*See generally* Filing No. 1 at CM/ECF pp. 9-10.)  Plaintiff's claim that she had a liberty interest arising out of the Due Process Clause itself is sufficiently pled to survive initial review under § 1915. Accordingly, this claim may proceed to service.  However, the court cautions Plaintiff that this is only a preliminary determination based on the allegations of the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

## 2.    State-Created Liberty Interest

In *Sandin v. Conner*, the Court held that states may create liberty interests that afford prisoners due process protections, but explained:

> [T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

515 U.S. at 484 (internal citations omitted) (emphasis added).  A state-created liberty interest arises when a state's actions will inevitably affect the duration of the sentence. *Id.* at 487.  In *Sandin*, the Court found that 30 days of solitary confinement, when compared with the inmate's overall prison environment, was not the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*

Here, Plaintiff has alleged that her summary removal from the work release program and summary revocation of her community custody classification resulted in "loss of passes, furloughs, and contact with family as well as remov[al] from intensive outpatient therapy and parole deferral." (Filing No. 1 at CM/ECF p. 6.) In addition, as set forth above, Plaintiff has alleged that Defendants removed her from the work release program and revoked her community custody status without telling her why and without giving her an opportunity to defend herself. At this stage in the proceedings, Plaintiff's claim that she had a state-created liberty interest that afforded her due process protection is sufficiently pled to survive initial review under § 1915. Accordingly, this claim may also proceed to service. However, the court cautions Plaintiff that this is only a preliminary determination based on the allegations of the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1.     Plaintiff's claims for monetary relief against Defendants in their official capacities are dismissed. However, Plaintiff's claims for injunctive relief against Defendants in their official capacities may proceed to service, along with Plaintiff's claims against Defendants in their individual capacities.

2.     To obtain service of process on Defendants, Plaintiff must complete and return the summons forms that the Clerk of the court will provide. The Clerk of the court shall send eight summons forms and eight USM-285 forms to Plaintiff for service on Defendants in their official and individual capacities, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the court. In the absence of the forms, service of process cannot occur.

3.      Upon receipt of the completed forms, the Clerk of the court will sign the summons forms, to be forwarded with a copy of Plaintiff's Complaint to the U.S. Marshal for service of process.  The Marshal shall serve the summons and the Complaint without payment of costs or fees.  Service may be by certified mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal.  The Clerk of the court will copy the Complaint and Plaintiff does not need to do so.

4.      Federal Rule of Civil Procedure 4 requires service of a complaint on a defendant within 120 days of filing the complaint.  However, because in this order Plaintiff is informed for the first time of these requirements, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

5.      Plaintiff is hereby notified that failure to obtain service of process on a defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

6.      The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "**October 20, 2014**: Check for completion of service of summons."

7.      The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court.  Plaintiff shall keep the court informed of her current address at all times while this case is pending.  Failure to do so may result in dismissal.

9

DATED this 18th day of June, 2014.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

    *This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.