IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA NELSON, | ) | 4:14CV3010 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DENISE SKROBECKI, STEVE | ) | |
| HUNZEKER, DAMON BRUBER, | ) | |
| and BROOKE BJERRUM, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a Motion for Summary Judgment (Filing No. 38) filed by Defendants Denise Skrobecki, Steve Hunzeker, Damon Bruber, and Brooke Bjerrum. Plaintiff Linda Nelson has sued Defendants under 42 U.S.C. § 1983 for violations of her right to due process. Nelson argues Defendants summarily removed her from a work release program without telling her why and without giving her a meaningful opportunity to defend herself. Nelson claims she had a constitutionally-protected liberty interest in remaining in the work release program. (*See generally* Filing No. 1.) Defendants argue in their unopposed summary-judgment motion that they are entitled to judgment as a matter of law because there are no genuine issues of material fact. In the alternative, they argue they are entitled to qualified immunity. The court agrees that Defendants are entitled to judgment as a matter of law and will grant their summary-judgment motion.

## I. BACKGROUND AND MATERIAL FACTS

Nelson was incarcerated at the Nebraska Correctional Center for Women ("NCCW") in York, Nebraska, at the time she filed her Complaint. The undisputed, material facts in this case are these: Nelson entered the custody of the Nebraska Department of Correctional Services ("NDCS") in 2012. (Filing No. 40-1 at CM/ECF p. 9.) In 2013, Nelson's custody was transferred to the Community Corrections Center - Lincoln ("CCCL"), which is an NDCS work-release facility. Nelson's

orientation materials with the CCCL reflect she entered this facility on or about June 20, 2013. (Filing No. 40-2; Filing No. 40-4.)

At some point between June 20, 2013, and October 15, 2013, Nelson secured full-time employment at Don & Randy's Truck Stop in Lincoln, Nebraska, as part of her work-release program. (Filing No. 40-1 at CM/ECF p. 14.) On or about October 15, 2013, Nelson's employer terminated her employment. (Filing No. 40-1 at CM/ECF pp. 40-41.) Thereafter, on October 18, 2013, Nelson's custody was transferred from the CCCL to the NCCW, a more restrictive facility; the reason cited for the transfer on Nelson's prison documents was that she was "out of [the CCCL] for hours that were not accounted for by her work." (Filing No. 40-8 at CM/ECF p. 1.) Once at the NCCW, Nelson underwent a classification review of her inmate custody status. On October 30, 2013, she waived advance notice of her classification hearing, and her hearing occurred on October 31, 2013. (Filing No. 40-9 at CM/ECF p. 3.)

Inmate classification/custody status is determined by a computed score. A computed score of 27 points or higher is required for community custody (i.e., work-release eligibility). (Filing No. 40-9 at CM/ECF p. 2.) Upon reevaluation of Nelson's classification, Nelson scored 26 points, just shy of the 27 points required for work-release eligibility. (Filing No. 40-9 at CM/ECF p. 2.) Accordingly, Nelson was demoted to minimum-custody status. (Filing No. 40-9 at CM/ECF pp. 2, 4.)

NDCS officials notified Nelson of her demotion to minimum-custody status on November 15, 2013. (Filing No. 40-10.) Nelson appealed to an NDCS review committee on November 16, 2013, but her appeal was denied by the committee on November 27, 2013. (Filing Nos. 40-11 and 40-12.) Specifically, the committee found her reclassification to minimum custody was appropriate based on her factor-rating score and her recent return from the CCCL. (Filing No. 40-12 at CM/ECF p. 1.)

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record that the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011). But where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. ANALYSIS

Nelson claims in this action that she had a constitutionally-protected liberty interest in her continued participation in the work-release program at the CCCL. Nelson further claims that her demotion to minimum-custody status violated her right to due process. In Defendants' unopposed summary-judgment motion, they argue Nelson did not demonstrate that she has been deprived of a liberty interest and so her due-process claims must fail.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural

3

protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Nelson must demonstrate that she has been deprived of a liberty interest in order to successfully claim that her Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (quotations omitted).

    1. **Due Process Clause**

Liberally construed, Nelson alleged she had a liberty interest that arose out of the Due Process Clause itself. In support of her argument, Nelson cited to the Eighth Circuit's decision in *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990). (Filing No. 1 at CM/ECF p. 6.) In *Edwards*, the Eighth Circuit Court of Appeals stated that a liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such as when he is on probation or parole. *Id.* In *Edwards*, the court held that an inmate enrolled in an Arkansas work release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution but lived in the community. *Id.* at 302. As the Tenth Circuit noted: "*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration." *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995). Indeed, other courts have similarly held that the revocation of things like parole, probation, and conditional release programs are protected by the Due Process Clause. *See*, *e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of probation status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (revocation of parole); *see also Harper*, 64 F.3d at 566-67 ("[A] prisoner release program which permits a convict to exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement."); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (finding inherent liberty interest in continued placement in supervised release program that allowed convict to live in society).

4

Here, Defendants distinguish the conditions of Nelson's confinement with that of the plaintiff in *Edwards*. Specifically, the *Edwards* plaintiff was allowed to live completely outside of a penal institutional setting at her parents' home. In contrast, Nelson lived at the CCCL and could leave the facility only within pre-approved limits of confinement. Also, Defendants provided evidence that Nelson was expected to choreograph every move outside of the facility with prison officials. For instance, Defendants demonstrated that Nelson could spend the night outside of the CCCL only with prison officials' prior approval, only for a limited duration, and only by approval of a detailed itinerary. (Filing No. 40-1 at CM/ECF pp. 102-104.) In addition, they demonstrated that Nelson's work-release rules required that prison officials approve her work schedule and she was required to notify prison officials of any changes in her work schedule, including days off, work location, the name of her supervisor, or if her employment was terminated. (Filing No. 40-3.) Indeed, Nelson was warned in the materials provided to her upon her entry into the work-release program that her failure to remain with the limits of her confinement could be deemed "as ESCAPE" and result in her prosecution to the fullest extent of applicable state law. (Filing No. 40-5.)

Nelson, who did not respond to Defendants' summary-judgement motion, failed to submit evidentiary materials showing there is a genuine issue for trial. For the reasons offered by Defendants, the court finds Nelson's conditions of confinement were regulated such that a liberty interest inherent in the Due Process Clause itself did not attach.

### 2. State-Created Liberty Interest

Liberally construed, Nelson alleged she had a state-created liberty interest in remaining in the work-release program at the CCCL. In *Sandin v. Conner*, the Court held that states may create liberty interests that afford prisoners due process protections, but explained:

> [T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner

as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.

515 U.S. at 484 (internal citations omitted) (emphasis added). A state-created liberty interest arises when a state's actions will inevitably affect the duration of the sentence. *Id.* at 487. In *Sandin*, the Court found that 30 days of solitary confinement, when compared with the inmate's overall prison environment, was not the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

Here, Nelson only participated in the work-release program for a matter of months. The key inquiry is whether, objectively, Nelson's removal from the work-release program imposed an atypical and significant hardship upon her as compared to the experiences of the large number of prisoners who spend the duration of their sentences in prison. *White v. Steuben Cnty., Ind.*, No. 1:11-CV-019, 2011 WL 4496504, at *11 (N.D. Ind. Sept. 27, 2011). But, an inmate serving out her sentence in prison locked in confinement *is the ordinary incident of prison life*, while an inmate serving her sentence in a work-release program is the exception. *Id.* (citing *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996); *Hinton v. Wells*, No. 06-C-0543-C, 2006 WL 3192381, at *1 (W.D. Wis. Nov. 1, 2006)). Nelson's removal from the work-release program resulted in her being confined to prison, which is the norm for prisoners. It did not impose an atypical or significant hardship on her. For this reason the court finds Nelson failed to state a claim for a state-created liberty interest in her work-release status.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (Filing No. 38) is granted.

2. The court will enter judgment by a separate document.

3. Defendants' Motion to Show Cause (Filing No. 41) is denied as moot.

DATED this 6th day of January 2016.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.